MilligAN, J.,
delivered the opinion of the Court.
In 1866, the prisoner, Strady, with Daniel G. Walters and John Sills, — all free persons of color, — were indicted in the Circuit Court of Tipton County, for the murder of Joseph Dickey. Sills and Strady were tried and convicted of murder in the first degree, and sentenced to be executed; from which they have appealed to this Court.
Sills, as it seems, is dead; and the case stands here alone in the name of Strady.
The bill of exceptions shows that the killing was perpetrated on the night of the 25th of May, 1866, in the store-house of the deceased. The next morning after the murder, the deceased was found in the store-room, with the doors locked, or barred, lying on the floor with his throat cut, and a “gash” on the side of his head. Near by him was a pan of water, his shoes and socks, and a hatchet, with blood and brains on the hatchet. His hat was found outside of the house, near one of the doors, with “a gash four inches long,” cut in it, with some blood upon it. Near the body, on the floor in the room, was found a pocket-book, torn open, — no money in it, — and several pieces of goods taken from the shelves, lying in different parts of the room.
The tracks of three persons, — two coarse brogans, and one “fine shoes,” — were traced from the river, and *303 back again to a point on the river, which bore the marks of a skiff’s having been landed at that point.
Two of the sons of the deceased were examined as witnesses; and, although they agree in the general and substantial circumstances attending the perpetration of the horrid deed, there is, nevertheless, some singular discrepancies in their statements, especially in reference to the number and character of the wounds on their father’s head and face, the cuts, in his hat, and, perhaps, the tracks leading from the river and again back in the same direction. But both undertake to detail, with great particularity, the subsequent confessions of the prisoner.
The confessions, as detailed by these witnesses, need not be particularly set out, further than to say, they admit the homicide was committed by the three parties named and charged in the indictment; and that the object in killing the deceased, was, to possess, themselves of his money. In the confessions, as detailed by these witnesses, there appears to be a description of the condition of the room, locality of its furniture, and the shoes, pan and hatchet, which corresponds in some particulars, with the facts as proven after the body was found.
These witnesses state that there was no violence or threats used in their presence, to induce the confessions; but the subsequent examination of the witnesses, shows that the prisoner, Strady, denied all connection with the killing, until they were literally extorted from him by hanging. One of the witnesses, J. W. Ballard, states, that on Monday after the killing, which, as it *304 appears, took place on Friday night previous, be and others “took Strady out to make him talk — took him to some woods, and told him to tell it soon or 'he might not have a chance, as we thought he might die. He had been tied all the time during his arrest — the rope was then around his neck; we then threw the rope over a limb, and pulled him up right smartly, until he was badly choked, and when let down he fell to the ground senseless; and on recovering, he still denied his connection with the murder; when we got a block to raise him on, and when we were raising him the second time, he confessed he and Sills had done the murder.”
The witness further, in substance, stated, that the next day after this most cruel transaction, Sills was sent for, who had been confined in Covington jail, and told that Strady had “told all about the crime, and it would be better for him to do the same.” He also denied all connection with it, and previously had made no confessions whatever. He was then taken to the same place where Strady, the day before, had been hung; and as he was being swung up, he confessed that “he, Alexander and Walters, had murdered Dickey.”
It appears that neither Sills or Strady, in their confessions to the witnesses who extorted them, made any statement which was corroborated by the situation of the room when the body of deceased was found, or by any thing else which was proven, as tending to establish their guilt.
But on the next day, or the day after Sills and Strady were committed to jail, Sills, after being cautioned by the Sheriff, that it would, perhaps, be bet *305 ter for him to say nothing about the alleged murder, took the sheriff aside in the prison, and made a mere circumstantial confession of the crime, involving himself, Walters and Strady, in guilt. But the confessions made by Sills to the sheriff do not appear to have been assented to by Strady, or even heard by him. They were made in a remote part of the jail, separate and apart from the other prisoners.
The bill of exceptions shows that the confessions, in the progress of the trial, were excepted to as soon as it appeared that they were extorted by violence; and the Court sustained the exception in the singular language, following: “The Court overruled all confessions, but that which proved the corpus delicti, or the discovery of facts, or corroborated by facts already known.”
But, notwithstanding this ruling of the Court, which to say the least of it, is somewhat obscure to unpracticed minds, it appears that the other witnesses were permitted to detail before the jury, without limitation or restraint, the confessions of the prisoners; but on the general charge, the Court, in substance, instructed the jury: “That confessions made freely and voluntarily, without hope of reward or the fear of violence, are admissible;” but confessions made by parties putin fear by violence, as a general rule, are inadmissible.”
The Court further told the jury: “If the confessions are corroborated by extraneous facts, or the truthfulness of the confession is made to appear from facts known to exist, and uncommunicated to the party, who, in confession, relates the facts, R is evidence of the *306 truthfulness of the confessions, notwithstanding, they were extorted by violence.”
He also told them, they would totally disregard all historical confessions, “and regard such portion only as relate to the corpus delicti, and being ascertained by extraneous facts, to exist.”
After further stating to the jury, if confessions were made after their mind had become tranquil, and the influence of fear removed, they would be receivable in evidence, etc., and then proceeded to say: “The Court holds that the confessions, while in jail, to the witness who deposes in this case, are admissible before you, and you are the judges of the facts; and it is your province to apply them to the cause, and attach whatever importance you may consider they merit, both as to the guilt or innocence of the defendant.”
The whole charge, when considered as it is presented in the bill of exceptions, is singularly obscure and confused, and in some respects, erroneous. While it is not, perhaps, of itself, a ground of a new trial, to allow confessions not admissible upon any ground to be detailed by the witness before the jury, if they are afterwards taken away from them by the Court, yet, it is certainly a very reprehensible practice; and in a case involving the life of the accused, imposes on this Court the duty of scrutinizing the record with the utmost care.
The admissibility of confessions in criminal cases, is dependant upon a preliminary question, which is always addressed to the presiding Judge, which it is his duty to determine, upon consideration of the age, situation *307 and character of the prisoner, and the circumstances under which they were made. If they are free and voluntary, they are deserving of the highest credit, because they are presumed to flow from the strongest sense of guilt; and, therefore, they are admitted as proof of the crime to which they refer; but a confession forced from the mind by the flattery of hope or the torture of fear, comes in such a questionable shape, when it is to be considered as the evidence of guilt, that no credit ought to be given to it; and, therefore, it is rejected: 1 Greenleaf’s Ev., sec. 219.
But the Court, after telling the jury, “as a general rule,” confessions induced by hope, or fear of violence, were inadmissible, he instructed them to regard such portion of the confessions only, as related “to the corpus delicti, and being ascertained by 'extraneous facts, to exist.”
Under this instruction, how could the jury tell what was excluded and what not? The whole mass of the confessions which had been extorted from the prisoners by the most cruel barbarity, was before them; and it was, we think, quite improbable, if not indeed impossi-sible, for the jury, under the laconic instructions of the Court, to separate such confessions as he considered legal, from those which were clearly illegal.
A prisoner is entitled to a clear and distinct exposition of the law of his case as applicable to the facts. Such was not the charge of His Honor, in respect to the admissibility of the confessions in this case.
But, on the hypothesis that the jury was able to *308 distinguish the admissible from the inadmissible confessions, were the instructions of the Court, in all other respects, in conformity to law? We think not. The charge in reference to the confessions of Sills, one of the prisoners, to the sheriff, while in prison, we think, obnoxious to more than one exception. It was made by Sills in a remote part of the prison, separate and apart from the other prisoners; and no evidence showing that Strady assented to it, or even heard it. On his return to the cell, after Sills’s confessions, the sheriff remarked, ‘‘boys, you have got yourselves into a bad fix;” and they said, they could not help it. “Witness don’t think Strady said any thing about it.”
Sills’s confessions, which extended to the circumstances of" the whole case, were made after the conspiracy, if any, had ended, and the murder had been perpetrated; and they were admitted as evidence on the trial against both Sills and Strady; and doubtless constituted a leading element in the mind of the jury, upon which their verdict was founded.
The rule of law in such cases, as laid down by Mr. Greenleaf in his Evidence, vol. 1, sec. 233, is as follows: “And in cases of conspiracy, riot, or other crime, perpetrated by several persons, when once the conspiracy or combination is established, the act or declaration of one conspirator, or accomplice,- in the prosecution of the enterprise, is considered the act of all, and is evidence against all. Each is deemed to assent to, or commend, what is done by any other in furtherance of the common object.” * * * “But, after the common enterprise is at an end, whether by accomplishment or aban *309 donment is not material, no one is 'permitted by any act or declaration of his own, to affect tbe others. His confessions, therefore, subsequently made, even though by the plea of guilty, is not admissible in evidence, as such, against any but himself.” See, also, Wharton’s Crim. Law, sec. 696, et sequiter.
Besides, these confessions were made the next day, or the day after he was imprisoned, which was only one or two days after he had been cruelly tortured to compel him to confess the crime, and without its having been clearly shown on the part of the State, that the influence of the former violence used upon him had been entirely dispelled. The witness says: “I told him it might be best for him-to say anything to me about it.” “He said he could not make the matter worse;” and then, on his return to the cell, in reply to the witness’s statement, “boys, you have got yourselves in a bad fix,” they said, “they could not help it,” — Strady saying nothing.
Now, the rule of law in such cases, is, that, although the original confessions may have been obtained by improper means, yet, subsequent confessions of the same or of like facts, may be admitted, if the Court believe, from the length of time intervening, or from proper warning of the consequences of confessions, or from other circumstances, that the delusive hopes or fears, under the influence of which the original confessions were obtained, were entirely repelled. In the absence of such circumstances, the influence of the motives proved to have been offered, will be presumed to continue and to *310 have produced tbe confessions, unless tbe contrary is shown by clear evidence; and tbe confessions will, therefore, be rejected: 1 Grreenleaf’s Ev., sec. 694.
Tbe warning must be explicit, says Wharton; and it also must be clear, that tbe prisoner understood such warning, before such second confessions are admissible in evidence. So that it is clear to our mind, that it is even doubtful whether tbe second admissions were properly receivable in evidence against Sills, and certainly not against tbe prisoner, Strady, now before the Court.
Tbe whole case, imperfectly as it is presented, no doubt, to us on this record, which shows, in a case of this magnitude, great carelessness, presents so many objectionable features, together with errors in the charge, which undoubtedly might, and we think did, influence the jury, that we feel constrained to grant a new trial, when more caution and accuracy will be observed in the separation of the competent from incompetent evidence, and in the instructions of the Court to the jury, according to the principles .laid down in this opinion.
Reverse the judgment.